M. RUMELY & COMPANY (A CORPORATION) v. CHARLES A. EMMONS ET AL

*Sale—Warranty—Written contract—Parol evidence.*

A written contract is presumed to contain the whole of the agreement of the parties, and all parol contemporaneous agreements are merged therein.

So *held*, where a portable engine and circular saw-mill and equipments were purchased upon a written warranty as to the engine, which provided for written notice to the vendor of its failure to comply with the warranty within one week after starting it, and that a failure to give such notice, or any use of the machine after the week without it, should be conclusive proof that it complied with the warranty. In a suit to recover a part of the purchase price, the balance having been paid without complaint, the vendees sought to show that just after the order containing the warranty was signed the vendor stated that he would not hold the vendees to the written warranty, and made other *verbal* warranties, upon which the defendants based their entire defense, but did not show a waiver of the written warranty and the substitution of the verbal one.

Error to Cass. (O'Hara, J.) Argued April 14, 1891. Decided May 8, 1891.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Spafford Tryon* and *Harsen D. Smith,* for appellants, contended:

1. The rule that parol evidence is inadmissible to vary or contradict a written agreement only applies to suits or questions arising between the parties to the agreement, and does not prevent a party from proving the truth by contradicting the writing by parol evidence in a contention with one not a party to it, and thereby prevent a fraudulent operation of the instrument upon his rights; citing 1 Greenl. Ev. § 279; *Brown v. Thurber,* 77 N. Y. 613; *McMaster v. Insurance Co.,* 55 Id. 222; *Evans v. Wells,* 22

Wend. 344; *Taylor v. Baldwin*, 10 Barb. 587; *Arbuckle v. Smith*, 74 Mich. 568.

2. Under the terms of this printed agreement no title passed, and the rights of the defendants rested in contract merely. Conceding that Memrod Rumely was a party to the printed warranty in the order, the question then is not whether a written contract can be varied or contradicted by parol, but whether an existing contract can be released, waived, and abandoned by a subsequent verbal agreement, and this seems to be established where the statute of frauds does not intervene; citing *Seaman v. O'Hara*, 29 Mich. 66, 67; *Barton v. Gray*, 57 Id. 622; *Rhodes v. Thomas*, 2 Ind. 638; *Brown v. Everhard*, 52 Wis. 205; *Kelly v. Bliss*, 54 Id. 187; *Hill v. Green*, 4 Pick. 114; *Lattimore v. Harsen*, 14 Johns. 330.

3. Rumely and those who represented him, after he had been informed of the failure of the engine in the particulars mentioned, and upon receiving such notice, made repeated attempts to repair the engine and put it in order, and on its being tendered back to him wanted to make a further trial by putting in new flues and making other repairs; and in putting the defendants to expense, cost, and trouble in rendering friendly assistance, he recognized the continued existence and validity of the warranty, and thereby waived his right to insist upon written notice within the week after the defendants had commenced to work the engine; citing *Insurance Co. v. Kittle*, 39 Mich. 54; *Cleaver v. Insurance Co.*, 71 Id. 414, 421; *Tunell v. Osborne*, 31 Minn. 343; *Flatt v. Osborne*, 33 Id. 98; *Titus v. Insurance Co.*, 81 N. Y. 410, 419; *Roby v. Insurance Co.*, 120 Id. 510, 517.

*Howell & Carr*, for plaintiff.

LONG, J. This is an action of *assumpsit* on a promissory note. On the trial in the court below, before a jury, the plaintiff had verdict and judgment for the amount of the note and interest. Defendants bring error.

On the trial it appeared that the plaintiff is a corporation, doing business at La Porte, Ind., and is the assignee of the contract or note upon which the suit is brought. The note was given as a part of the purchase price of a portable engine and circular saw-mill, with equipments. The purchase of the mill was made on March 8, 1887, at the price of $1,120.

Prior to December 4, 1882, the ,business to which the plaintiff succeeded was conducted by M. & J. Rumely, and they transferred the business of manufacturing and dealing in portable saw-mills and engines on that day to Memrod Rumely, who carried on the business thereafter under the firm name of M. & J. Rumely. At the date of the purchase of the engine defendants resided in Cass county, this State, and defendant Kimmerlee had been acting as the agent of M. & J. Rumely. Charles A. Emmons and defendant Kimmerlee went to La Porte, Ind., and looked over the engine and mill, and Charles A. Emmons, for himself and Rollin H. Emmons, completed the purchase on March 8, 1887. The purchase price being agreed upon, a written order for the engine, mill, etc., was drawn and signed by Charles A. Emmons and Kimmerlee for the two Emmons, and for M. & J. Rumely by Memrod Rumely, the proprietor of the business there. The order is dated at La Porte, and recites:

"I or we, the undersigned, residing in Cass county, State of Michigan, this day order of M. & J. Rumely, La Porte, Ind., through C. H. Kimmerlee, agent, at Dailey, Mich., to be loaded on the cars at La Porte, Ind., on or about the 17th day of March, 1887, and shipped to Dailey station, Cass county, State of Michigan, the following machinery."

The engine, mill, etc., are then specifically described in the order. The order contains the following warranty:

"The within ordered engine is warranted to be made of good material, to be constructed in a workman-like manner, and to do as much work as any of the same size in the market, if properly handled. * * * If said machinery fails to comply with this warranty, notice in writing of such failure must be given to M. & J. Rumely, La Porte, Ind., and to their agent who sold the machine,. within one week from the date of starting said machine, and, upon receipt of such notice, time allowed, opportunity and friendly assistance given, to reach the machinery

85 Mich.—33.

and remedy such defects, if any; otherwise the said warranty is waived, and M. & J. Rumely not responsible thereon. If the machinery then cannot be made to fill the warranty, it shall be returned free of charge by the purchaser to the place where received, and money and notes (if previously settled for), to the amount represented by the above machinery, shall be returned, and no further claim be made on M. & J. Rumely.

"Failure to give such notice, or any use of such machinery after such time has elapsed without such notice, shall be deemed conclusive evidence that such machinery complies with the warranty, or if said machinery be settled for, and notes given for the same, after having tried the same, then such failure, or such trial and settlement, shall forever bar and estop the purchaser from all claim for damages on account of a breach of such warranty."

The engine and mill were shipped and received by the defendants Emmons, who commenced its use, and about one month thereafter they paid $100 on the purchase price. The order provided for this payment, and the giving of two notes, one of $420, to be due July 8, 1887, and one of $600, due March 8, 1888. The note of $420 was paid after an extension of time which was granted by the payee. The note of $600 has not been paid, and is the one upon which the suit is brought. The plaintiff on the trial proved the execution of the order and note, and the assignment of the same to the plaintiff, who had succeeded to the business of Memrod Rumely after the giving of the contract, and then put the contract and note in evidence.

Defendants, with the plea of the general issue, gave notice that certain verbal warranties were made on the sale of the property by Mr. Rumely, and that these warranties were the inducements to the defendants to purchase, and that the engine did not comply with such warranties, by reason of which the defendants had sus-

tained great damages, which the notice particularly and specifically sets forth, and which damages they would recoup upon the trial. The defendants upon the trial called defendant Kimmerlee, who testified that he signed the contract with Charles A. Emmons; that after the paper was signed he thought of the warranty in the order, and called Mr. Rumely's attention to it, and said to him:

"Of course, according to the agreement of the sale, this general warranty does not apply."

And then Mr. Rumely said:

"Of course not. I have made you the terms,—told you just what it would be,—and it will be just that way. I don't want Mr. Emmons to think that I am going to put out any machine that is not just what I guarantee it in every respect. If it is not, I don't want any machine paid for.   *   *   *   You need have no fears. This engine is just as well made as any I have ever made, and will answer his purpose all right. If it does not, I will make it right. I do not want any machine to go out upon trial that will not recommend itself."

Mr. Emmons expressed some doubt about the flues; they were pretty long, and he did not know about their standing; when Mr. Rumely said:

"They are full five-eighths of an inch thick, and they need have no fears about them; the engine is going to work all right, and I will warrant it."

Defendant Charles A. Emmons testified in like manner as to the warranty, and stated that after he and Kimmerlee had signed the order, which was in duplicate, he noticed the warranty in the order, and called Rumely's attention to it, who then stated:

"I will warrant this engine, just as I tell you. I do not hold you to this warranty. If anything gives out in any respect, I will make it good. The flues are five-eighths of an inch thick, and will stand all right, and you can run it up to 16 or 18 horse power."

The defendants further gave evidence tending to show that the flues leaked and got out of repair, and they got a man to fix them at first, and that they sent word to Rumely, finding they could not fix them, and he sent a man to look the engine over and fix it up, but that the flues still leaked, and they tried to have Rumely take the engine back, which he refused to do; that they had a large contract for cutting ties for the Michigan Central Railroad Company, and could not run this engine, and were compelled to get another to complete the contract; that, as soon as these defects were discovered, they sent word to Rumely, but that the defects were not discovered until in January, 1888. This was some 10 months after the engine was purchased, and it had been used during that time by the defendants. All this evidence was admitted under the objection of plaintiff's counsel. After this testimony was admitted, and an objection to further testimony, and motion to strike out such testimony, the court stated to counsel as follows:

"Let it be understood that, if you can show that Mr. Rumely ever said to either of the defendants that he would waive the giving of notice, I perhaps would receive such testimony, but, in the absence of such waiver, the time being so remote, I feel compelled to sustain the objection."

No such notice as required by the contract was ever given, and it is not claimed that Mr. Rumely ever waived the notice so required. The court thereupon directed a verdict for the plaintiff for the amount of the note and interest.

There are many errors assigned, but the whole defense must rest upon the right of the defendants to show a verbal warranty,—one not embraced in the written order, —and the breach of that warranty. It is claimed that the defendants had a right to show this, for the reason

that Rumely stated that he would not hold them to the warranty contained in the order. The time when this statement by Rumely is claimed to have been made was immediately after the signing of the contract; or, as defendant Kimmerlee states it, as soon as the contract was signed he noticed it and spoke of it. No claim is made under the warranty contained in the writing, but the whole defense is based upon the verbal warranty.

It is a well-settled rule of law that, when the parties have reduced their contract to writing, it must be presumed that the writing contains the whole of the agreement, and all parol contemporaneous agreements are merged therein. However, it is insisted that, after the writings were signed, Rumely agreed not to hold the parties to just what was contained in the writing, but made other warranties as to the goodness and quality of the flues, and agreed to be bound by them. It is not, however, insisted that there was any express waiver of written notice of defects which might be found, and which the contract provides for, or that such notice was given. The evidence shows that the defendants tried the engine for a month, and then paid the $100; that they continued its use from the last of March to the 8th day of July, 1887, when the $420 note became due; that they got an extension of that, and then paid it, without finding fault with the engine; and that no fault was found until after January 13, 1888, when the flues began to leak. Instead of giving the notice required, or notifying Rumely, they sent for another man, who came and tried to fix it, and failed. Under such circumstances, even if they relied upon the verbal warranty, they were bound to give the notice to Rumely, and give him an opportunity to repair.

But the written contract, and warranty therein, are

not shown to have been waived. The contract could not rest partly in writing and partly in parol, and this is not claimed. Either the writing must control, or there must be shown an agreement to waive all that the writing contained, and the substitution of the verbal warranty for the writing. There is no such waiver shown.

The claimed verbal warranty was contemporaneous with the writing. It was made then and there, and is a part of one and the same transaction. But, even if this were not true, it appears, under defendants' claim, that the whole transaction was closed upon the order being signed, and the representations and warranties thereafter made would not be supported by any consideration whatever, and therefore could not be enforced.

It is shown conclusively that the written order, and warranty therein contained, was the contract between the parties. In *Nichols, Shepard & Co. v. Crandall*, 77 Mich. 401, a similar contract was entered into, and it was held by this Court that parol evidence was not admissible to change or vary it. This case falls within the principles there laid down. In this view of the case, the other errors assigned do not become important.

The judgment must be affirmed, with costs.

The other Justices concurred.