## Fannin v. Williams et al.

(Decided November 1, 1929.)

CHAS. PRATER for appellant.

L. C. FIELDER for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellees, V. V. Williams and A. J. Williams her husband, who were the plaintiffs below, brought this action against appellant, E. W. Fannin, to recover $700 alleged to be due them. They obtained a judgment in the lower court for the full amount claimed, and the defendant has appealed.

In their petition the plaintiffs alleged in substance, that on September 24, 1924, they borrowed from Oscar Hunt the sum of $1,200 and executed and delivered to him their joint note for that amount, and to secure the payment of which they executed and delivered to Hunt a mortgage for $1,200 on a lot of ground in Boyd county. There was an outstanding mortgage on this lot of $400 held by Adolph Williams. The defendant, E. W. Fannin, an attorney at law, represented them in the transaction, and they left $800 of the borrowed money in his hands with the understanding that he was to pay off the $400 mortgage to Adolph Williams in order to give Oscar Hunt a first mortgage on the property, and Fannin was to retain $400 until the indebtedness to Hunt fell due when he was to pay it to Hunt. On the same date that the note and mortgage to Hunt were executed Fannin executed and delivered to plaintiffs a writing which read as follows:

"it is agreed that e. w. fannin will pay oscar hunt four hundard. dollars. when the maortadge is due, and to pay off the four four hundard dollars that is against the place.

"this the 24 Sept. 1924.

"(S.) E. W. Fannin."

It was further alleged in the petition that the defendant had failed and refused to pay any part of the debt owing to Adolph Williams except the sum of $100, and that he had refused to pay to Oscar Hunt any part of the $400 left in his hands for that purpose, and that after the debt to Hunt fell due on September 24, 1927, Oscar Hunt obtained a judgment against V. V. Williams and A. J. Williams for the sum of $1,200.

No demurrer was filed to the petition, but the defendant moved the court to require the plaintiffs to file the original writing referred to in their petition. This was done, but counsel for plaintiffs, with the evident purpose of forestalling any untoward occurrences, took the ori-

ginal writing before it was filed to a photographer and had it photographed. The writing was filed, and, in order to guard against its loss, it was attached to a pleading in the record by means of brads. A few days thereafter it disappeared.

In his answer the defendant denied all of the allegations of the petition, including the one that he had signed and executed the writing in question. A few days after the writing disappeared from the record the defendant filed the following motion: "Now comes the defendant E. W. Fannin, and moved the Court to requare L. C. Fielder, Attry. to replace back the papers suid on in the above stiled case, or show cause why same should not be replaced back in the file, on or before 18 day of this month, when the said case is set for trial."

On the trial of the case the testimony introduced in plaintiffs' behalf tended to support all of the allegations of their petition. It tended to show that the $1,200 borrowed by plaintiffs from Hunt was deposited by defendant to his credit in the Ashland Day and Night Bank, and that he had only paid to plaintiffs the sum of $400, and to Adolph Williams the sum of $100, leaving $700 unaccounted for.

The defendant, testifying in his own behalf, denied that he had received any part of the proceeds of the loan from Hunt to plaintiffs, but admitted that he had given to plaintiffs, on the day of the transaction with Hunt and on the following day, checks totaling $400, and which he explained as being in payment of a pre-existing debt which had no connection with the transaction with Hunt. He denied emphatically that he had prepared or signed the writing referred to in the petition and plaintiffs' evidence or any writing similar thereto, and stated that, if plaintiffs' attorney would produce it, he would demonstrate to the jury that the signature thereto was not his signature, but was a forgery. In rebuttal Luis Jeminez, a photographer, was introduced as a witness by the plaintiffs, and he produced a photostatic copy that he had made of the writing in question just before it was filed as a part of the record. Experts in handwriting who were familiar with defendant's handwriting, basing their opinion upon their examination and inspection of the photostatic copy, testified that the signature on the original writing was that of the defendant. The photostatic copy of the writing is filed as an exhibit in the record as are also a number of writings admittedly signed by the

defendant. The testimony of experts on handwriting was not necessary to convince nonexperts that all of the signatures are in the handwriting of one and the same person. However, defendant again went on the stand and denied that the signature was his, and attempted to point out to the jury differences between the signature on the writing as it appeared in the photostatic copy and the other signatures which he admitted had been made by him. His testimony at this point, however, is more or less incoherent and not convincing. A reading of his testimony given at this stage of the proceedings leaves the impression that he was more or less surprised, if not nonplused, by the production of the copy of the writing.

It is urged in defendant's behalf on this appeal that his motion for a directed verdict should have been sustained, because the writing upon which the plaintiffs' action is based is indefinite, incomplete, and insufficient to support a judgment without the introduction of parol evidence. The action, however, is not based on the writing. The entire agreement between the parties is set out in the petition, and the writing is merely referred to as evidentiary of a part of the contract. The writing on its face is incomplete and only purports to express part of the contract. While parol evidence is inadmissible to vary or contradict the terms of a written contract, this rule does not apply where the writing only purports to express part of the contract, or is expressed in such incomplete terms as to be unintelligible. Under such circumstances parol evidence is admissible to explain the writing so long as it does not vary or contradict it. Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749. Here the parol evidence does not vary or contradict the writing, but merely supplements and explains it. But as heretofore stated, the petition was not based upon the writing which was merely evidence of the contract and which did not purport to be the entire contract between the parties and was not treated as such. The writing was merely the acknowledgment of a debt owing to plaintiffs by defendant, and it did not purport to set out the consideration or to detail the circumstances under which the debt was created. It is also suggested that the defendant was entitled to a new trial on the grounds of surprise and newly discovered evidence. In his own affidavit filed in support of his motion for a new trial, the defendant stated that he was surprised by the production of the photostatic copy of

396

the writing alleged to have been signed by him. Undoubtedly this statement of defendant is true, but not in the sense that entitles him to a new trial.

The affidavits of three persons were filed who claimed they heard the plaintiff, A. J. Williams, make certain statements relative to the writing in question a short time before the trial. We are not impressed by these affidavits which are contradicted by a number of affidavits filed by plaintiffs, and we are of the opinion that the trial court did not abuse a sound discretion in refusing to grant a new trial on this ground.

Judgment affirmed.