PER CURIAM.
This is a breach of contract case. Plaintiff/appellant York claimed that the City owes it money for services performed under a contract. The City refused to pay on the grounds that the services performed were not authorized pursuant to the manner of the contract.
York is a civil engineering firm in Montgomery. From 1968-1974, York did work for the City on several street-widening projects. In 1974, the City became dissatisfied with the existing contract because it was open-ended rather than limited to specific projects, because the City Engineering Department had no control over the work being done under it, and because authorization for projects could be issued by any of several people — the authorization was not required to be in writing. Additionally, investigation by the City Engineer, Kenneth Hemphill, revealed that the City was behind in payments on the contract, and York was behind in billing; that* in fact, York was intentionally underbilling in order to control its income flow for tax purposes.
After a meeting between the parties, it was agreed that an audit would be conducted to determine where the parties stood and a new contract drawn up. The audit was eventually performed by the City Engineer, and bills based thereon were submitted by York to the City. The City now contends that this was meant as a final settling up as to work accomplished up to that time. York contends that it was still following its practice of underbilling on the assumption that it would later bill for the remainder under the new contract.
The new contract was executed on May 20, 1974. It was limited to ten specific projects, each of which was divided up into four phases. The first phase required no specific authorization, the second two could be commenced only upon written authorization by the City Engineer, and the fourth phase required merely “written authorization.” Supervision of the performance of the contract was transferred to the City Engineering Department. The contract also contained a clause allowing the City to terminate at any time and providing that, in the event such power was exercised, York would be compensated for work done up to that point.
In 1976, the City terminated the contract “for its convenience.” Under specific terms of the contract, York then submitted final bills on several projects. The City refused to pay them, contending that the work had been performed without written authorization. This suit was brought.
*885 York first contends that it is entitled to recover under Section VII of the contract which provides:

“SECTION VII. TERMINATION FOR CONVENIENCE OF THE CITY

“A. The City may terminate this AGREEMENT any time by a notice in writing from it to the Engineer. If the AGREEMENT is terminated by the City, as provided herein, the Engineer will be paid an amount which bears the same ratio to the total compensation as the services actually performed bear to the total services of the Engineer covered by this AGREEMENT, less payments of compensation previously made. It is understood and agreed between the parties that each of the street improvements referred to above shall, in the event of termination under this provision, be treated as separate entities. It is provided further that if less than sixty percent (60%) of the services covered by this AGREEMENT have been’ performed upon any of the separate street improvements referred to above, upon the effective date of such termination the Contractor shall be reimbursed (in addition to the above payment) for that portion of the actual out-of-pocket expenses (not otherwise reimbursed under the AGREEMENT) incurred by the Engineer during the AGREEMENT period which are directly attributable to the uncompleted portion of the services on any of the separate street improvements covered by this AGREEMENT. If this AGREEMENT is terminated due to the fault of the Engineer, SECTION VI hereof, relative to termination, shall apply.”
York argues that this contractual provision should not be read in conjunction with the written authorization requirement, which is incorporated into a different section; but, instead, should be read literally to authorize payment for “services actually performed” whether or not authorized, in writing. This argument is not persuasive. All the provisions of a contract must be construed together so as to give harmonious operation to each of them so far as their language will reasonably permit. Manchester Sawmills Co. v. A. L. Arundel Co., 197 Ala. 505, 73 So. 24 (1916). Further, the construction urged by York would be contrary to the purpose for which the contract was drafted. It would allow York to recover for any services at all, whether or not authorized if the City decided to terminate for its own benefit. It is clear that the “services actually performed” referred to in the termination clause are limited to those services which have been duly authorized as provided in other sections of the contract.
York next asserts that the written authorization requirement was waived by the City, or that the City is estopped from asserting it, or has modified the contract by its subsequent conduct. In the alternative, it argues that it is entitled to recover for work and labor under quantum meruit. It also contends that the usual deference accorded determinations made by a trial court after an ore tenus hearing should not be applied here, since there are no important disputed facts. Even if there were no material facts at issue, a contention which the record does not support, the “ ‘. question of the existence of an estoppel is a question to be settled by the triers of the facts . . . It is only where “ ‘. . . the facts are undisputed and only one reasonable inference in such respect can be drawn from the evidence, [that] the question whether an estoppel is established is one of law for the court.’ ” Humphrey v. Boschung, 287 Ala. 600, 608, 253 So.2d 769, 775 (1971). Where, as here, the trial court makes no express findings of fact, the reviewing court must assume that the trial court made such findings as would support the judgment. Dockery v. Hamner, 281 Ala. 343, 202 So.2d 550 (1967).
Although there are ample facts in this case which would support York’s theories of recovery, we are unable to say that the record is so devoid of facts in support of the trial court’s disposition that the judgment is clearly erroneous and against the great weight and preponderance of the evidence. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). Although there is some evidence which suggests that work was re *886 quested and accepted by the City without written authorization on some occasions, there is also testimony by the City Engineer that York requested written authorization on the projects in question on several occasions, and was informed that such authorization would not be forthcoming until a funding source was identified. Similarly, there are facts which would support a denial of recovery under quantum meruit. The judgment is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.